UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY LAMONT MOORE #255379,

        Plaintiff,

v.                                  Case No.  2:16-cv-91
                                  HON. GORDON J. QUIST

UNKNOWN ZALEWSKI, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

        This is a civil rights action brought by state prisoner Anthony Moore pursuant to 42 U.S.C. § 1983.  Plaintiff sues Defendants Zalewski, Perttu, Yon, Olson, Griel, Loop, McIntire, Axley, Dabb, and Bull for acts which occurred while he was housed at the Ojibway Correctional Facility (OCF).  Plaintiff alleges that each Defendant engaged in retaliation against him because of his grievance submissions and past lawsuits.  In addition, Plaintiff asserts that Defendants violated his Eighth Amendment rights by moving him to G-Unit and by destroying his property. Defendants filed a motion for summary judgment (ECF No. 55).  Plaintiff filed responses (ECF Nos. 66,67, and 68).

        On October 13, 2016, Plaintiff filed an amended complaint. (ECF No. 13).  Plaintiff alleges that before he filed case no. 2:16-cv-10 against MDOC employees Perttu, Loop, Olson, Taskila, and Bull for failing to protect him from a risk of harm, Defendants Perttu and Griel opened his outgoing legal mail and read Plaintiff's complaint.  When Defendant Perttu contacted Plaintiff to review a grievance that Plaintiff had filed, Defendant Perttu informed Plaintiff that he knew

about the lawsuit.  Plaintiff alleges that Defendant Perttu told him that the lawsuit was the reason that Plaintiff would not be moved to a different cell.  Plaintiff's grievance was denied at each step.

Plaintiff alleges that Defendant Perttu filed a false misconduct ticket against him to prohibit Plaintiff's transfer to a two-man cell, and that Defendant Perttu told Plaintiff that he would not be protected from inmate threats because Plaintiff had filed the lawsuit against him and his coworkers.  Plaintiff alleges that Defendant Perttu told Plaintiff that he had a connection in the mail room and that Defendant Griel informed him of "everything."  Plaintiff alleges that he filed a grievance on this issue, but this grievance was not processed by Defendant Yon for unknown reasons.  For some reason, Defendant Perttu told Plaintiff that staff sends prisoners to OCF so that Defendants Axley and Dabb can retaliate.

Plaintiff alleges that in March 2016, Defendant Perttu refused to place Plaintiff on the transfer list to a down-state prison.  Plaintiff alleges that Defendant Perttu informed him that Plaintiff did not deserve placement on the list because of the lawsuit that he had filed.  As a result, Plaintiff filed a grievance.

On March 8, 2016, Plaintiff was informed by an unknown corrections officer that he was being moved to G-Unit by Defendants Perttu and ARUS Loop.  When Plaintiff asked Defendant Perttu why he was being moved to G-unit, an observation unit, when he had done nothing wrong, Defendant Perttu stated he was moving Plaintiff because of the lawsuit and the grievances he had filed.  Defendant Loop also told Plaintiff that he was being moved for writing grievances and filing lawsuits against co-workers.

When Plaintiff arrived at G-Unit, he tried to explain to Defendant Axley that he was not supposed to be there.  Defendant Axley stated that he did not want to hear Plaintiff's

problems and that he intended to write a lot of misconduct tickets on Plaintiff to increase Plaintiff's security level to facilitate his transfer to the maximum security prison in Baraga.  When Plaintiff raised his concerns to Defendant Bull, Defendant Bull stated that Plaintiff should have thought of that before he named Defendant Bull in a lawsuit.  Plaintiff alleges that after Defendant Axley dropped his television set, Defendant Dabb told Plaintiff that Axley would make Plaintiff's "life a living hell" because Plaintiff liked to file lawsuits and grievances.

Plaintiff approached an unknown correctional officer and informed him that he feared for his safety from another prisoner and that he feared Defendants Axley and Dabb were retaliating against him.  Defendant McIntire told Plaintiff that she had been warned by Defendant Perttu that Plaintiff liked to file grievances and lawsuits.  Defendant McIntire stated that she would not help Plaintiff and that Plaintiff needed to "go back on the yard and let them punch on you."

Plaintiff alleges that Defendant Dabb packed Plaintiff's property prior to his move to G-Unit.  Plaintiff discovered that some of his property had been destroyed and some of his property was missing.  Plaintiff's grievance on this issue was denied.  Plaintiff alleges that he was denied a Prisoner Benefit Fund form by Defendant Yon and by Mrs. Olson.

On March 17, 2016, during an adjournment of a misconduct hearing, Plaintiff asked Defendant Yon to obtain a list of all phone calls Plaintiff had made to his mother, obtain a copy of his S.P.O.N. list, obtain a statement from Mr. Gathern Kennedy to show that Defendant McIntire lied about everything, and obtain other evidence that would support Plaintiff's claim that he was not guilty of the misconduct ticket.  Defendant Yon refused, stating that Plaintiff should have thought about that before he wrote a grievance against Defendant Yon and that Plaintiff liked to submit grievances and to file lawsuits.  Plaintiff submitted a grievance that Defendant Yon did not

process.  Defendant Yon told Plaintiff that he would reject as many grievances as possible to prevent Plaintiff from filing a lawsuit.  When Plaintiff returned to his cell, his property was scattered everywhere by Defendant John Doe.  Defendant John Doe told Plaintiff that he was just following Defendant Yon's orders since Plaintiff liked to write grievances.

Plaintiff has asserted five categories of claims against the Defendants: (1) retaliation against Defendants Bull, Axley, Dabb, Loop, Perttu, Yon, Zalewski, and McIntire, (2) Eighth Amendment cruel and unusual punishment against Defendants Axley, Dabb, Loop, and Perttu, (3) denial of court access against Defendants Perttu and Griel, (4) supervisor liability against Defendants McIntire and Bull, and (5) conspiracy against Defendants Loop and Perttu. (ECF No. 66, PageID.604).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close***,** 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere

scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff asserts that Defendants Bull, Axley, Dabb, Loop, Pertto, Yon, Zalewski, and McIntire retaliated against him.  Defendants deny that they took retaliatory action and that Plaintiff suffered any adverse conduct.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendants make three separate arguments in support of their summary judgment motion on Plaintiff's retaliation claims.  Defendants argue: (1) Plaintiff's assertion that he was transferred to G-Unit and not transferred to his preferred prison or unit was only a *de minimis* act that cannot rise to the level of adverse conduct; (2) the "checkmate doctrine" applies to Plaintiff's retaliation claims arising under the alleged false misconduct tickets; and (3) Defendant Yon

5

gathered all the evidence requested by Plaintiff before making a decision on the misconduct ticket. Plaintiff requests that the Court dismiss Defendant Zalewski because Defendant Zalewski was simply following Defendant Yon's order and did not retaliate against Plaintiff based upon his own actions.  (ECF No. 68, PageID.695).

Plaintiff asserts that Defendants Loop and Perttu retaliated against him when they refused to move him to a two-man cell, but instead moved him to G-Unit so that he could be retaliated against by Defendants Axley and Dabb.  Plaintiff has alleged that he was told that he was moving to G-Unit because he liked to write grievances and file lawsuits.

Plaintiff alleges that Defendant Axley told him that he would write misconduct tickets on Plaintiff until Plaintiff's security level increased enough to support his transfer to the maximum security prison in Baraga.   When Plaintiff complained about fearing for his safety, Defendant Axley issued him a misconduct ticket for disobeying a direct order.  Plaintiff states that Defendant Axley intentionally dropped his television set to cause damage and told Plaintiff that he intended to make Plaintiff's life a living hell.  Defendant Dabb also told Plaintiff that he would make his life a living hell.  Defendant Dabb destroyed Plaintiff's legal property and took food that Plaintiff's mother had given him.  When Plaintiff complained to Defendant Bull about Defendant Axley and Dabb's conduct, Defendant Bull told Plaintiff that he should have thought about that before he filed a lawsuit, and ordered Plaintiff to return to his unit.  Plaintiff complained to Defendant McIntire that he should not be in G-Unit, but McIntire responded to Plaintiff by telling him that since he liked to file grievances and lawsuits "he should just go back to the yard and let them punch you up."

Further, Plaintiff alleges that he was called into Defendant Perttu's office on February 2, 2016, because he had written a grievance about not being moved "on top of the hill" to a two-man cell.  Plaintiff asserts that he was given a false misconduct ticket for using inappropriate language.  Plaintiff has presented a declaration from prisoner Johnny Taybron who overheard the conversation between Defendant Perttu and Plaintiff.  Prisoner Taybron states that Plaintiff did not make the comment attributed to him by Defendant Perttu. Plaintiff had a hearing before RUM Obradovich.  RUM Obradovich refused to call Johnny Taybron as a witness at the hearing and stated that he would never believe a prisoner over a staff member.  Plaintiff was found guilty of the misconduct ticket based upon Defendant Perttu's statement and observation.

Plaintiff asserts that Defendant Yon retaliated against him by refusing to gather requested evidence including evidence of a telephone call with Plaintiff's mother, a copy of Plaintiff's SPON list, a statement from prisoner Gathern Kennedy, and other evidence.  Plaintiff asserts that Defendant Griel, who worked in the mailroom, provided Defendant Perttu with a copy of Plaintiff's civil rights complaint in case number 2:16-cv-10.  Defendant Perttu read the complaint and informed Plaintiff that he knew everything about the lawsuit.  Defendant Perrtu also told Plaintiff that Defendant Griel informs him about everything.  Defendant Griel told Plaintiff that he opens Plaintiff's outgoing mail.

Defendants first, argue that Plaintiff cannot show an adverse action was taken against him because any transfer within the OCF could only be from one level I cell to another level I cell and Plaintiff has no legal right to reside in a particular cell or prison.  In the opinion of the undersigned, Plaintiff has asserted more than *de minimis* action.  Plaintiff alleges that he was transferred to the G-Unit at OCF in order to be more easily harassed and given misconduct tickets

7

so that his security level would increase to support a transfer to the maximum security prison in Baraga. In fact, Plaintiff is now confined at the Baraga Correctional Facility. Plaintiff has also asserted a number of other factual claims to support his retaliation claims that have not been addressed by Defendants including confiscating his legal property and food items, damaging his television set, reading his outgoing legal mail, and issuing false misconduct tickets to increase his security level. Plaintiff has presented unrebutted allegations that rise beyond mere *de minimis* acts which present issues that must be decided at trial.

In *Maben v. Thelen*, 2018 WL 1599335, at 9 (6th Cir. April 3, 2018), the Sixth Circuit set forth several examples of what may constitute adverse action.

> In *Hill v. Lapin*, this Court found that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse." 630 F.3d 468, 474 (6th Cir. 2010). In *Noble v. Schmitt*, this Court denied qualified immunity where the conduct at issue was that "Defendants restricted his privileges after he filed a considerable number of grievances against them." 87 F.3d 157, 162 (6th Cir. 1996). In *Harbin–Bey v. Rutter*, when concluding that the prisoner suffered no adverse action, the Court noted that the prisoner "did not lose any privileges as a result of the [Notice of Intent to Conduct an Administrative Hearing]." 420 F.3d 571, 579 (6th Cir. 2005).
>
> In other cases, we have found sufficiently adverse punishments that were "at least as severe as" the one imposed here, including confiscating legal papers and other property, *Bell*, 308 F.3d at 604, subjecting the prisoner to retaliatory cell searches, *id.*, and damaging a prisoner's typewriter, *LaFountain v. Harry*, 716 F.3d 944, 948–49 (6th Cir. 2013); *see also Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016) ("[E]ven though his Class I misconduct was reduced to a Class II misconduct at his hearing, Watson lost his radio as a result and the Class II misconduct became part of his prison record. This is substantially more than a *de minimis* consequence for someone confined in a prison cell."); *Barr v. Diguglielmo*, 348 Fed.Appx. 769, 774 (3d Cir. 2009) (finding an adverse action where a prisoner "was prohibited from participating in *any* prison activities

8

(including religious activities ...)"); *Reynolds v. Green*, 25
Fed.Appx. 256, 261 (6th Cir. 2001) (finding an adverse action where
a prisoner was transferred from a facility where he could "come and
go with permission," to a facility where he could not); *Hall v. Sutton*,
755 F.2d 786, 787–88 (11th Cir. 1985) (holding that an inmate stated
a First Amendment retaliation claim based upon the confiscation of
his tennis shoes). *But see Ingram v. Jewell*, 94 Fed. Appx. 271, 273
(6th Cir. 2004) (finding that a loss of fourteen days of privileges did
not constitute adverse action).

*Id*. Plaintiff has made similar allegations which support his claim of adverse conduct such as

damaging and confiscation of his personal property and transferring him to a unit that would enable

officers to harass and issue misconduct tickets in effort to increase his security level and transfer

him to a more restrictive prison.  In the opinion of the undersigned, the adverse conduct issue is

best left to the factfinder and is not an issue that may be resolved by a summary judgment motion.

Defendants argue that Plaintiff's retaliation claims based upon alleged false

misconduct retaliation claims must be dismissed under the "checkmate doctrine," because in each

instance he was found guilty after a hearing.  However, the Sixth Circuit expressly rejected the

"checkmate doctrine" in *Maben* and determined that "[a] finding of guilt at a prison misconduct

hearing does not act as an absolute bar to a prisoner's First Amendment retaliation claim."  *Id*. at

5.

Plaintiff claims that Defendant Yon, when acting as a hearings officer on a

misconduct ticket written by Defendant McIntire, failed to consider Plaintiff's evidence before

finding Plaintiff guilty.  Plaintiff asserts that Defendant Yon refused to gather documents to

support his claim that he was justified when he refused to comply with Defendant McIntire's order

because he feared for his safety.   However, the record establishes that Defendant Yon considered

all the evidence requested by Plaintiff and that Defendant Yon even adjourned the hearing so that

he could hear the recording of the telephone conversation between Plaintiff and his mother and to have an opportunity to review additional documentary evidence.  (Hearing Report, ECF No. 56-8, PageID.396-399).  Plaintiff has presented no evidence that Defendant Yon retaliated against him during the misconduct hearing by refusing to consider Plaintiff's evidence.  The record is contrary to Plaintiff's claims.  The fact that Defendant Yon found that Plaintiff violated Defendant McIntire's order is not a basis for supporting a retaliation claim that Defendant Yon refused to consider Plaintiff's evidence.  In the opinion of the undersigned, Plaintiff's claim that Defendant Yon retaliated against him should be dismissed.

Plaintiff has asserted that Defendants McIntire and Bull are liable because of their status as supervisors and due to their failure to prevent Plaintiff's move to G-Unit or to move Plaintiff to the top of the hill.  Plaintiff has further alleged that when he informed both Defendants McIntire and Bull that he was improperly moved to G-Unit by Defendants Perttu and Loop, both Defendants McIntire and Bull stated that Plaintiff was moved because he filed grievances and lawsuits.  Liability under Section 1983 must be based on more than merely the right to control employees.  *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).  Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*.  *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325.  A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct.  *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982).  *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert.*

10

*denied* 469 U.S. 845 (1984). In the opinion of the undersigned, Plaintiff has asserted that Defendants McIntire and Bull were actively involved in the retaliatory conduct and not simply liable as supervisors.

Plaintiff argues that he was denied access to the courts after Defendant Griel opened his legal mail containing his civil rights complaint in case 2:16-cv-10.  Defendant Griel allowed Defendant Perttu to read the complaint.  Plaintiff states that this placed him at a tactical disadvantage since Defendant Perttu read Plaintiff's complaint.  Defendant Perttu was also a named Defendant in that case and was served a summons and complaint.  Plaintiff has failed to explain how Defendant Perttu gained any advantage by reading the complaint before Plaintiff officially served it on Defendant Perttu.  Plaintiff cites the Eighth Circuit case *Cody v. Weber*, 256 F.3d 764 (8th Cir. 2001) as authority.  However, in that case, prison officers read private legal mail that never became a matter of public record.  In this case, Plaintiff has alleged that Defendant Perttu read the complaint that Plaintiff filed in case 2:16-cv-10.

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments.  *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Prison officials have a two-fold duty to protect a prisoner's right of access to the courts.  *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995).  First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration.  *Id.* (citing *Bounds*, 430 U.S. at 824-28).  Second, the right of access to the courts prohibits prison officials from erecting any barriers that may

11

impede the inmate's accessibility to the courts.  *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)). In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation.  *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.

An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced.  *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005); *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994).  "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline."  *Harbin-Bey*, 420 F.3d at 578 (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)).  Plaintiff has failed to allege any actual prejudice.  Plaintiff merely alleges that Defendant Perttu read his complaint before it was filed and served on Defendant Perttu.  Thus, Plaintiff suffered no actual injury, and in the opinion of the undersigned, his access to the courts claim fails.

Plaintiff asserted an Eighth Amendment cruel and unusual punishment claim against Defendants Axley, Dabb, Loop, and Pertto.  The exact basis for Plaintiff's Eighth Amendment claim is unclear.[1]  It is not clear if Plaintiff is asserting a failure to protect claim or simply a cruel and unusual punishment claim.  Plaintiff claims that he is not asserting a deliberate indifference claim, even though he alleges that Defendants acted with deliberate indifference. Plaintiff claims that Defendants Axley and Dabb violated his Eighth Amendment rights when they

---

[1] In case no. 2:16-cv-10, Plaintiff alleged that Defendants Bull, Loop, Perttu and others failed to protect him after another inmate at OCF threatened harm.  That case was dismissed on August 31, 2017.

harassed, retaliated, and damaged and destroyed his property due to Plaintiff's grievances and lawsuits.  In the opinion of the undersigned, Plaintiff's claims of harassment, retaliation, and destruction and confiscation of property do not rise to the level of an Eighth Amendment cause of action.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety."  *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).  "Routine

discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim."  *Id.*

    In the opinion of the undersigned, Plaintiff's Eighth Amendment claims fail to implicate matters relating to his health, safety, and well-being.  Plaintiff has made allegations that could support a retaliation claim, but those allegations cannot be transformed into a generalized cruel and unusual punishment claim without establishing deliberate indifference to one of life's basic  necessities.  Allegations of harassment, retaliatory conduct, and destruction of personal property do not rise to Eighth Amendment claims.  The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions.  *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir.  Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights.");  *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan.

21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.") Moreover, Plaintiff has not shown that any Defendant caused him personal harm or failed to protect him from personal harm.  Plaintiff has made some general allegations that he should not have been placed in G-Unit because he would be harmed by a prisoner already in G-Unit.  However, Plaintiff has not supported this claim or established that any Defendant denied him protection from a known harm.

Alternatively, Defendants argue that they are entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful.  *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).  "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct.  *Id.* at 816.  If the

15

court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted.  The court may consider either approach without regard to sequence.  *Id.*  In the opinion of the undersigned, for the reasons previously stated, a question of facts exists on Plaintiff's retaliation claims against Defendants Perttu, Loop, McIntire, Axley, Dabb, and Bull, and on Plaintiff's conspiracy claim.[2] The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights.  *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991).

Accordingly, it is recommended that Defendant's Motion for Summary Judgment (ECF No. 55) be granted in part and denied in part as follows:  The motion should be granted as to Plaintiff's access to the courts and Eighth Amendment claims, and denied as to Plaintiff's retaliation and conspiracy claims.  Defendants Zalewski, Griel, and Yon should be dismissed. Defendants Perttu, Loop, McIntire, Axley, Dabb, and Bull should remain in this case.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   April 30, 2018

---

[2] Defendants did not separately address Plaintiff's conspiracy claim.

16